UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SL MONTEVIDEO TECHNOLOGY, INC., a Minnesota corporation, | |
| Plaintiff, | Hon. Richard H. Kyle |
| -vs- | Case No: 03-3302-RHK/FLN |
| EATON AEROSPACE, LLC., a Delaware limited liability company, and ASTROMEC, INC., a Nevada corporation, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MAY 25, 2005 MOTION FOR PROTECTIVE ORDER TO PREVENT SCHEDULED DEPOSITION OF ANDREW NEUHALFEN** |
| Defendants. | |

---

| | |
|---|---|
| H. Verwys (P23803)<br>Plunkett & Cooney, PC<br>Attorneys for Plaintiff<br>333 Bridge Street, Ste 530<br>Grand Rapids, MI 49504<br>V: 616-752-4600     F: 616-752-4607 | Michael H. King<br>Elizabeth M. Bradshaw<br>Ronald Banerji<br>LeBoeuf, Lamb, Greene & MacRae, LLP<br>Attorneys for Defendants<br>180 North Stetson Ave., Ste. 1175<br>Chicago, IL  60601<br>V:  312-794-8050     F:  312-794-8100 |
| David A. Engen<br>Baxter Engen, LTD<br>Co-Counsel for Plaintiff<br>Ames Business Center, Ste 360<br>2500 West County Road 42<br>Burnsville, MN 55337<br>V:  952-224-0900     F:  952-224-0901 | Frederick W. Morris<br>Leonard, Street & Deinard<br>Co-Counsel for Defendants<br>150 South Fifth Street, Ste 2300<br>Minneapolis, MN 55402<br>V: 612-335-1500     F:  612-335-1657 |

---

## INTRODUCTION

Seldom has a motion, both through omission and misstatement, been so factually flawed and legally baseless.  After refusing multiple requests over 9 weeks to provide a deposition date when the witness and defense counsel would be "available", they simply chose to ignore valid subpoenas by filing this motion and failing to appear, and thus deprive Plaintiff of the testimony it needed to file by June 1, 2005 its Daubert motion to disqualify the witness from offering opinion testimony at trial.  This motion should be denied, and the Defendants sanctioned by an order precluding trial testimony from the witness for failure to permit timely discovery.

1

**CHRONOLOGICAL BACKGROUND**

Beginning as early as March 10, 2005, Plaintiff's principal counsel, Mark Verwys ("Mr. Verwys") told one of Defendants' attorneys, Elizabeth Bradshaw ("Ms. Bradshaw") that he wanted to depose Dr. Neuhalfen during the last two weeks of April, and he asked where the deposition would occur. [1][A]  *Ms. Bradshaw never replied*.

On April 1, 2005, another of Defendants' attorneys, Ronald Banerji ("Mr. Banerji") timely served by e-mail [2] the Rule 26 expert witness report of their sole liability expert, Andrew Neuhalfen, PhD ("Dr. Neuhalfen").  That report strongly suggests that Dr. Neuhalfen is not qualified by knowledge, skill, experience, training or education to offer any expert opinions with respect to the product and issues involved in this matter, that his opinions are not based on sufficient facts or data, and that his opinions are unreliable and untrustworthy because they are not the product of reliable principles and methods reliably applied to the facts of this case. However, the specific factual information upon which Plaintiff's Motion can and will be based is available to Plaintiff only through its expert witness deposition of Dr. Neuhalfen.

Receiving no response to his March 10, 2005 request, on April 7, 2005 Mr. Verwys sent an e-mail to Ms. Bradshaw [3] with an attached notice of Dr. Neuhalfen's deposition [4] on April 19, 2005 at his office in Naperville, IL.  The notice stated that for the convenience of the witness and/or defense counsel the deposition could also be taken on April 20, 2005, and it requested production of the documents listed in the appendix to Dr. Neuhalfen's Rule 26 report one hour before the start of the deposition.  Ms. Bradshaw replied by an April 8, 2005 e-mail [5] stating that Dr. Neuhalfen was "not available" on either April 19 or 20, that he had not "volunteered" his office, that his deposition had to be taken in defense counsel's office in Chicago, and that with respect to the request to review Dr. Neuhalfen's documents an hour prior to the deposition start, Defendants' would "comply with [their] obligations under the Federal Rules, but no more."  *Ms. Bradshaw neither suggested nor requested any alternate deposition date*.

---

[A] All numbered references are to concomitant lines of the Appendix filed in support of this memorandum, and the related exhibit attached to the Appendix.

On April 8, 2005 Mr. Verwys sent an e-mail [6] to Ms. Bradshaw asking what Dr. Neuhalfen was doing on April 19 and 20 that made him "unavailable", specifically asked for dates when he would be "available", and asked what Federal Rule(s) she intended to comply with respect to Dr. Neuhalfen's file documents. *Ms. Bradshaw never replied*. On May 2, 2005 Mr. Verwys sent another e-mail [7] to Ms. Bradshaw suggesting three specific dates for Dr. Neuhalfen's deposition: May 9, 16 and 23, 2005. *Again, Ms. Bradshaw never replied.*

By this Court's May 6, 2005 and May 9, 2005 [8] pretrial scheduling orders, non-dispositive motions are required to be filed by June 1, 2005. In a telephone conference with counsel in early May, the Court affirmed that Daubert disqualification motions are considered to be non-dispositive motions. In a May 9, 2005 e-mail to Ms. Bradshaw [9], Mr. Verwys again attempted to get Ms. Bradshaw to agree to completion of depositions of the parties' respective liability experts [B] in sufficient time to permit the filing of anticipated Daubert motions:

> Judge Noel agreed with our suggestion of a July 1 date to complete expert witness discovery, but not <u>as the cut-off for non-dispositive motions</u>, <u>which he left at June 1</u>. That is a problem, <u>because I expect that one or both of us plans non-dispositive motions, at least as to our respective liability experts, based on what we learn during their depositions. Therefore, we either have to try to complete at least the liability expert depositions in May</u>, or we have to get the non-dispositive motion date moved to July 1. The latter seems unlikely. <u>I can see if Dan Kjer is available on May 16 or 17</u> (I am committed elsewhere the last three days next week), and <u>I could take Andy Neuhalfen's deposition on May 25 or May 27</u>. We can then agree to do the damage experts in the first two weeks of June. *(emphasis added)*

Ms. Bradshaw replied by e-mail on May 13, 2005 [10], by which she transmitted a notice of deposition [11] for Dan Kjer on May 25, 2005, *co-opting one of the two dates Mr. Verwys had suggested for Dr. Neuhalfen and proposing no alternative date(s) for his deposition*. Despite the lack of any prior request by Ms. Bradshaw as to his availability, Dan Kjer nevertheless rearranged his work schedule to make himself available at the noticed location in Minneapolis, more than a 5 hour round trip drive from his home near Montevideo, MN.

---

[B] To this point, and until May 17, 2005 (see below), Defendants had indicated that they intended to use one of their two allotted expert witness depositions for one (Dan Kjer) of SLMTI's two expert opinion employees (Dan Kjer / Bill Houchens) and their other expert witness deposition for SLMTI's retained damages expert Neal Lapidus. It should be noted that Mr. Kjer and Mr. Houchens were each deposed for approximately 10 hours in January 2005, at which time they testified to both facts and opinions.

3

By May 16, 2005, on at least 5 occasions since March 10, 2005, Mr. Verwys had suggested 7 different dates for Dr. Neuhalfen's deposition, had asked for alternate dates, and had sought input on access to Dr. Neuhalfen's file, *without an affirmative response from any of Defendants' three Chicago attorneys*. Despite the necessity to obtain a transcript and complete the required memorandum of law in support of Plaintiff's Daubert motion over the Memorial Day weekend, and in the face of a complete lack of cooperation from defense counsel, Mr. Verwys was forced to take the following actions on May 16, 2005:

- Preparation and personal service on Dr. Neuhalfen of a Rule 45 subpoena [12] from the US District Court for the Northern District of Illinois requiring delivery of certain items listed on Appendix A to his April 1, 2005 Rule 26 report for inspection and copying from 2:00 pm to 3:00 pm CDT on May 26, 2005 at the law offices of Cassiday, Schade & Gloor, 20 N Wacker in Chicago. The subpoena was accompanied by a check for a full day's witness fee and round trip mileage either from Dr. Neuhalfen's office in Naperville, IL or his home in Algonquin, IL to the Chicago Loop. The subpoena stated that no testimony would be taken, and provided that Dr. Neuhalfen need not appear but could designate an employee or agent to deliver the documents and supervise the inspection and copying. Finally, the subpoena requested production of the documents in the same alphabetical order listed on Appendix A to Dr. Neuhalfen's April 1, 2005 Rule 26 report, and thus presumably in the order in which he keeps them in the usual course of his business.

- Preparation and personal service on Dr. Neuhalfen of a Rule 45 subpoena [13] from the US District Court for the Northern District of Illinois requiring Dr. Neuhalfen to appear for his deposition at defense counsel's Chicago office at 9:00 am on May 27, 2005. The subpoena was accompanied by a check for a full day's witness fee and round trip mileage either from Dr. Neuhalfen's office in Naperville, IL or his home in Algonquin, IL to the Loop.

- Preparation and service on defense counsel of Plaintiff's Second Notice of Deposition [14] for Dr. Neuhalfen at defense counsel's Chicago office at 9:00 am on May 27, 2005.

The foregoing documents were served on Ms. Bradshaw by mail on May 16, 2005. [15]

Apparently ignoring Mr. Verwys' May 16, 2005 letter and enclosed subpoenas and deposition notice, late in the afternoon on May 17, 2005 Ms. Bradshaw sent Mr. Verwys an e-mail [16] with a deposition notice [17] for Bill Houchens in Minneapolis on May 26, 2005 at 9:00 am CDT. This e-mail was Defendants' first indication that they wanted to again depose Mr. Houchens, this time as an expert witness. Upon reading the e-mail late in the evening on May 17, 2005, Mr. Verwys immediately replied by e-mail [18], stating in pertinent part:

> <u>I don't know if Mr. Houchens is available on May 26, 2005. I am not available that day, as I will be in Chicago that afternoon reviewing the documents subpoenaed from Dr. Neuhalfen and preparing for his deposition pursuant to subpoena the following day</u>. Notice of that deposition, and copies of the subpoenas served on Dr. Neuhalfen on May 16, 2005, were served on you by conventional mail yesterday. Additional copies are attached to the e-mail transmitting this letter. *(emphasis added)*

At 8:30 am EDT the next morning, May 18, 2005, Ms. Bradshaw left Mr. Verwys a voicemail message [19] in which she stated that Dr. Neuhalfen might not be available on May 27, 2005, but that she would be willing to try and "juggle things" to make him available <u>if</u> Mr. Houchens could appear for deposition on May 24, 2005, so that all three liability expert depositions could be completed by the end of the following week. She followed up with an e-mail message [20] a few minutes later to the same effect, stating that she would "juggle schedules" to produce Dr. Neuhalfen for his deposition on May 27, 2005 but <u>only if</u> she received immediate notification that Bill Houchens agreed to be deposed on May 24, 2005. [C] That e-mail also hinted that Dr. Neuhalfen was not going to comply with Plaintiff's documents subpoena, suggesting instead that Mr. Verwys forgo any pre-deposition review of the Dr. Neuhalfen's documents and instead pay to have his entire file copied, in part because Dr. Neuhalfen would "...need them next week to prepare for his deposition."

---

[C] Ms. Bradshaw also stated that she really didn't care which SLMTI employee appeared on which day, as long as both depositions were completed on May 24 and 25, 2005.

5

Pursuant to Ms. Bradshaw's request, Mr. Verwys immediately inquired as to Mr. Houchens availability on May 24, 2005.  Despite the fact that it was his son's 14th birthday and the family had dinner plans, Mr. Houchens agreed to rearrange his work schedule, adjust the birthday party arrangements and make the 5 hour round trip drive to Minneapolis from his home near Montevideo, MN on that date.  Because Mr. Verwys had a prior commitment in Michigan on the 24th, Plaintiff's Minneapolis counsel, David Engen, despite his lack of significant prior involvement in the substantive proceedings, rearranged his schedule to appear and defend Mr. Houchens' deposition.  One hour after her request for immediate notification, Mr. Verwys advised Ms. Bradshaw by a letter sent by e-mail [21] that Mr. Houchens deposition could proceed as she requested on May 24, 2005.  Ms. Bradshaw confirmed the deposition by an amended notice of deposition [22] dated May 18, 2003.

Unfortunately, less than five hours later, by an e-mail [23] sent on the afternoon of May 18, 2005, Ms. Bradshaw reneged on her agreement to produce Dr. Neuhalfen on May 27, 2005.  She suggested that Dr. Neuhalfen could appear for his deposition on June 2, 2005 [D], and that Defendants would be willing to move the non-dispositive motion deadline of June 1, 2005 "if that would be a concern."  Upon reading the e-mail late in the evening on May 18, 2005, Mr. Verwys immediately replied by e-mail [24], in pertinent part:

> On April 8, I asked you by e-mail to tell my why Dr. Neuhalfen was not available on April 19 or 20, the dates I originally chose for his deposition, and asked you for dates on which he would be available. You never replied to that e-mail, and never gave me any dates for his deposition. June 2 won't work. May 27 is the day.

Mr. Verwys also reiterated that he expected to review Dr. Neuhalfen's documents on May 26, 2005 pursuant to the May 16, 2005 subpoena.  Mr. Verwys then immediately followed up with a second e-mail [25], specifically replying to each point in Ms. Bradshaw's morning e-mail of May 18, 2005.

---

[D] In addition to being beyond the non-dispositive motion deadline, Mr. Verwys has been scheduled since late February 2005 to be in Kansas City, MO on June 2 and 3, 2005 to depose the plaintiff in a product liability action involving amputation of limb.

6

Late in the afternoon on May 19, 2005, defense counsel Michael King ("Mr. King") sent Mr. Verwys an e-mail message. [26] This was the first substantive communication by Mr. King, who to date has never appeared in court, never signed a pleading, and never appeared at a deposition in this matter. Nevertheless, Mr. King stated that it was he who was going to "be defending Dr. Neuhalfen's deposition", that he was "unavailable" on May 27, 2005, and that the subpoenaed date was "inconvenient" for Dr. Neuhalfen. Upon reading the e-mail late in the evening on May 19, 2005, Mr. Verwys immediately prepared a long (5 page) letter to Mr. King which was transmitted by e-mail [27] early on May 20, 2005. On the assumption the Mr. King was unfamiliar with the sequence of events, the letter contained a lengthy chronology of the events surrounding Dr. Neuhalfen's deposition scheduling and stated, in pertinent part:

> Dear Mike:
>
> This is in response to your May 19, 2005 e-mail in which you indicate that you will be covering Dr. Neuhalfen's deposition, that May 27 "is inconvenient" for Dr. Neuhalfen, and that you will get me new dates in the next 2-3 weeks. That is unacceptable.
>
> While in most cases I am able to work cooperatively with counsel to coordinate schedules, I regret that I cannot do so in this instance, for two reasons. First, Judge Noel has issued a Fourth and Final Pretrial Scheduling Order which sets June 1, 2005 as the deadline for filing non-dispositive motions. As your associate Beth Bradshaw confirmed in a recent telephone conference with Judge Noel, non-dispositive motions include Daubert motions to disqualify potential expert witnesses. I need to complete Dr. Neuhalfen's deposition in sufficient time to allow filing of such a motion by Judge Noel's deadline. Second, although I have gone to extraordinary lengths the in the last few weeks to accede to every one of Beth's demands, at great inconvenience to others and expense to my client, your office has been remarkably cavalier in issuing unilateral ultimatums. To properly represent my client, I have been left with no choice but to proceed strictly by the rules.
>
> * * *
>
> Cooperation is not supposed to be a one-way street. <u>I have accommodated every request, demand and unilateral action by your office in order to permit you get your expert witness depositions completed prior to the June 1 non-dispositive motion deadline. Your office has not reciprocated, forcing my client to incur hundreds of dollars of additional and unnecessary expense to comply with the rules Beth insisted she wanted to enforce</u>. As I said at the outset, I don't enjoy practicing law in this fashion. Fortunately, I am rarely forced to do so. *(emphasis added)*

Mr. King left Mr. Verwys a voicemail that suggested he still did not understand what had transpired, so on May 23, 2005, Mr. Verwys sent him another e-mail [28] which states, in part:

7

> In April, knowing my schedule in May and June and the deadlines we faced, I made multiple attempts to accommodate the case requirements with the lawyers' and witness schedules. When those attempts failed, I was forced to schedule Dr. Neuhalfen's deposition on May 27, the last date available on my calendar prior to the Court's motion deadline, given your office's last-minute appropriation of May 24 and 25 for the depositions of Bill Houchens and Dan Kjer.

Mr. Verwys further pointed out to Mr. King the lengths to which Plaintiff had gone to assure that the Defendants would be able to complete their two liability expert depositions in time, and that his firm has eight (8) attorneys in its Chicago office, two of whom (Ms. Bradshaw and Mr. Banerji) have done virtually all of the work on this matter on Defendants' behalf. Mr. King's immediate e-mail reply [29] reiterated, without explanation, that May 27 was "simply not available", and threatened filing of the subject motion.

On May 24, 2005, Bill Houchens and SLMTI local counsel David Engen appeared at the offices of Defendants' Minneapolis counsel, where Ms. Bradshaw conducted and completed the first of her two expert witness depositions, albeit repeating much of what she had already covered in Mr. Houchens' January 2005 deposition.

Late in the evening on May 24, 2005, in a final attempt to persuade defense counsel to allow Dr. Neuhalfen to comply with the May 16, 2005 subpoenas, Mr. Verwys sent an e-mail [30] to Mr. King, again laying out in some detail the juxtaposition of Plaintiff's successful efforts to permit completion of Defendants' expert opinion witness depositions, and Defendant's equally determined efforts to prevent Plaintiff from achieving the same goal. The following morning, Mr. Verwys flew from Grand Rapids, MI to Minneapolis, and appeared with Dan Kjer at the offices of Defendants' Minneapolis counsel, where Ms. Bradshaw conducted and completed the second of her two expert witness depositions, again repeating much of what she had already covered in Mr. Kjer's January 2005 deposition. Mr. Verwys arrived back home in Michigan at approximately 11:00 pm, obtained access to his e-mail account, and received and reviewed the subject motion.

On May 26, 2005, Mr. Verwys drove from Grand Rapids, MI to the offices of Cassiday, Schade & Gloor, 20 N Wacker, Chicago, IL for inspection and copying of Dr. Neuhalfen's documents pursuant to the May 16, 2005 subpoena.  No documents were delivered during the prescribed 3 hour period starting at 2:00 pm CDT.  Upon arriving back at his hotel, and gaining access to his e-mail account at approximately 6:15 pm CDT, Mr. Verwys received and reviewed a noon e-mail [31] from Ms. Bradshaw which stated that Dr. Neuhalfen's documents had been available for review "all day today at Packer Engineering" in Naperville, IL.

On May 27, 2005, Mr. Verwys and court reporter Deanna Amore appeared at the offices of Defendants' attorneys in Chicago to take Dr. Neuhalfen's deposition pursuant to the May 16, 2005 subpoena and notice of deposition.  Mr. Verwys had made arrangements with Ms. Amore to obtain a rough copy of the transcript immediately upon completion of Dr. Neuhalfen's deposition, and to receive a final clean copy by e-mail prior to midnight on May 28, 2005.  However, Ms. Bradshaw appeared and announced that Defendants' had filed the subject motion the previous afternoon, that Dr. Neuhalfen would not appear and that the deposition would not proceed.  Mr. Verwys made an appropriate record and left the building. [32]  It is believed that Mr. Banerji may also have been present in the offices, because he prepared and electronically filed and additional motion and related documents in this case later the same afternoon.

## LAW AND ARGUMENT

A.  **The Subject Subpoenas Were Properly Issued And Served**

Fed.R.Civ.P. 45, Subpoenas, provides, in pertinent part:

(a)  FORM; ISSUANCE

    (1)  ... A command to produce evidence or to permit inspection may be joined with a command to appear at ... at deposition, or may be issued separately.

    (2)  ... A subpoena for attendance at a deposition shall issue from the court for the district designated by the notice of deposition as the district in which the deposition is to be taken. If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made.

9

\* \* \*

 (b) SERVICE.

  (1) ... Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law. ...

  (2) ... a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena ...

\* \* \*

Plaintiff's two subpoenas properly commanded Dr. Neuhalfen to separately produce his documents and appear for deposition on separate days. The subpoenas were properly issued by the US District Court for the Northern District of Illinois, the district in which Dr. Neuhalfen lives and works and the district in which he was commanded to produce his documents and appear for deposition, and were properly served in that district. Dr. Neuhalfen was paid the statutorily-required witness and mileage fees in connection with each subpoena.

 **B.** **Plaintiff's Counsel Took Reasonable Steps To Avoid Imposing Undue Burden Or Expense On Dr. Neuhalfen**

Fed.R.Civ.P. 45, Subpoenas, provides, in pertinent part:

 (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

  (2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

Prior to issuing the subpoena for Dr. Neuhalfen's deposition, Plaintiff's counsel on at least 5 occasions over the preceding 9 weeks had suggested 7 different dates for Dr. Neuhalfen's deposition, and had asked for alternate dates, all without any response from defense counsel.

10

The subpoena requesting production of Dr. Neuhalfen's file documents specifically provided that no testimony would be taken and that he could comply with the subpoena simply by having an employee or agent deliver the documents to the neutral location where Plaintiff's counsel had access to and control over copying facilities.

### C. Defendants' Objections To Plaintiff's Document Production Subpoena Are Factually And Legally Groundless

Fed.R.Civ.P. 45, Subpoenas, provides, in pertinent part:

> (c) (2) (B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
>
> * * *
>
> (d)   DUTIES IN RESPONDING TO SUBPOENA.
>
> (1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

Dr. Neuhalfen never personally served Plaintiff's counsel with any objection to production. The communications from defense counsel did not ultimately object to production, but attempted to wrongfully dictate (1) the location of the production, unilaterally deciding it would occur at Dr. Neuhalfen's business in location in Naperville, IL, where Plaintiff's counsel had no access to or control over copying facilities; and, (2) the manner of production, unilaterally deciding that the documents would not be produced either as Dr. Neuhalfen kept them in the usual course of business or labeled to correspond with the categories in the demand.

11

## D. Dr. Neuhalfen Failed To Properly Seek Relief From The Subject Subpoenas And Is Deemed To Be In Contempt Of Court

Fed.R.Civ.P. 45, Subpoenas, provides, in pertinent part:

(d) (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i) fails to allow reasonable time for compliance;

    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, ..., or

    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

    (iv) subjects a person to undue burden.

\* \* \*

(e) CONTEMPT. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a non-party to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Dr. Neuhalfen has taken no action in the US District Court for the Northern District of Illinois seeking relief from the subject subpoenas, nor would such action have been successful if taken, because none of the subparagraphs of Rule 45(d)(3)(A) are applicable. Furthermore, Dr. Neuhalfen has no "adequate excuse" for his failure to obey the subpoenas. According to ¶ 4 of Defendants' Motion, Dr. Neuhalfen was "out of town for depositions the days immediately prior to May 27th". He therefore must have been "in town" on May 27, and available for deposition. As noted above, he did not need to be "in town" on May 26, because the document production subpoena specifically permitted delivery of the documents by proxy.

## E. Defendants' Motion For A Protective Order Is Factually And Legally Groundless

Fed.R.Civ.P. 26(c), PROTECTIVE ORDERS, provides, in pertinent part:

>   (c)   Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>   (1)   that the disclosure or discovery not be had;
>   (2)   that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>   (3)   that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>   (4)   that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>   (5)   that discovery be conducted with no one present except persons designated by the court;
>   (6)   that a deposition, after being sealed, be opened only by order of the court;
>   (7)   that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
>   (8)   that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
>
>   If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

By its terms, this rule provides an avenue for protection of a "party" or "person" from annoyance, embarrassment, oppression, or undue burden or expense. It is not intended to protect attorneys or their schedules. It is not applicable when defense counsel falsely claim to be "unavailable". It is not applicable when defense counsel fail or refuse to make themselves and a retained witness on any of 7 dates over 9 weeks, fail or refuse to advise of dates when they and the witness are "available", and then claim that they are "unavailable" on the third of three dates noticed by Plaintiff's counsel. Defendants have not only failed to establish good cause for the relief requested, but have through their counsel exhibited a unilateral flaunting of the rules and this Court's scheduling orders which justifies barring from Dr. Neuhalfen from presenting any testimony at trial of this matter.

13

## F. Plaintiff Is Entitled To An Order Barring Any Testimony At Trial By Dr. Neuhalfen

LR 26.3(c) states:

> (c) Unless otherwise stipulated by the parties or ordered by the Court, disclosures and discovery regarding testifying experts are governed by Federal Rules of Civil Procedure 26(a)(2) and (b)(4).

Fed.R.Civ.P. 26(b)(4), Trial Preparation Experts, provides, in pertinent part:

> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.

LR 1.3 SANCTIONS states:

> Failure to comply with a local rule maybe sanctioned by any appropriate means needed to protect the parties and the interests of justice. These sanctions include excluding evidence, preventing a witness from testifying, striking of pleadings or papers, refusing oral argument, imposing attorney's fees, or any other appropriate sanction.

Dr. Neuhalfen's Rule 26 report was served on April 1, 2005. Plaintiff therefore had the right to take his deposition at any time thereafter. Plaintiff's counsel suggested 7 dates for Dr. Neuhalfen's deposition, without any response from defense counsel. Plaintiff's counsel noticed Dr. Neuhalfen's deposition for 2 of those dates in late April 2005, but the deposition did not occur because he or defense counsel were "unavailable". Plaintiff's counsel suggested a schedule which would have permitted all parties to complete their respective liability expert depositions by May 27, 2005 and did not object when defense counsel ignored the dates cleared and acceptable for the depositions of SLMTI employee experts and then co-opted one of the suggested dates for Dr. Neuhalfen's deposition. Plaintiff's counsel and employees adjusted their schedules at the last minute to conform to defense counsel's unilateral demands, in reliance on defense counsel's assertion that schedules would be "juggled" to produce Dr. Neuhalfen as required by subpoena. Defense counsel then reneged on that assertion, even though Dr. Neuhalfen was in fact apparently "available" on May 27, 2005, and should have known that his deposition had been sought for over 9 weeks.

So, the bottom line is that Dr. Neuhalfen was apparently instructed to ignore Plaintiff's valid subpoena because no defense attorney was "available" to sit in his deposition and object to the form of any improperly formulated questions. Putting aside the potential availability of the 5 other attorneys in the Chicago office of Defendants' attorneys, and ignoring the potential availability of Defendants' Minnesota attorney, who presumably could have stepped in just as Plaintiff's Minneapolis attorney did to accommodate defense counsel's desire to depose Bill Houchens on May 24, 2005, Defendants' explanation as to the "unavailability" of its three primary defense attorneys rings hollow.

- Michael King has taken no active role in this litigation to date. He has not attended any hearings or depositions. Yet, he claims that he was the designated attorney to defend Dr. Neuhalfen's deposition, but was "unavailable" on May 27, 2005 because "interviewing and out-of-state witness" took precedence over an expert's compliance with a Federal court subpoena.

- Elizabeth Bradshaw has taken almost every deposition and has attended all court hearings. She was "unavailable" because she was supposedly "attending a hearing in an unrelated matter". However, on May 27, 2005 she was present in her office in Chicago at the time noticed for Dr. Neuhalfen's deposition.

- Ronald Banerji is very conversant with the facts of this case, having drafted numerous pleadings including the subject motion. In addition, he has appeared and defended Plaintiffs' depositions of the following Defendants' employees in this matter:

    | Steve Carlson | Eaton Aerospace | 09-14-04 |
    | Phillip Cull | Eaton Aerospace | 09-14-04 |
    | Steve Castle | Astromec | 08-19-04 (with E Bradshaw) |

    Finally, it is believed that Mr. Banerji was present in his office in Chicago on May 27, 2005 because he prepared and filed another motion in this case late on that date.

In short, defense counsel were, or could have been, "available" to defend Dr. Neuhalfen's deposition on May 27, 2005.

Defendants and their counsel have failed to comply with Fed.R.Civ.P. 26(b)(4), and hence with LR 26.3, by failing to permit Plaintiff the deposition of Dr. Neuhalfen to which it was entitled, within the time limit necessary for Plaintiff to comply with this Court's non-dispositive motion deadline.  Pursuant to LR 1.3, the appropriate relief is to preclude Dr. Neuhalfen from offering any testimony at trial.  The Court is therefore requested to deny Defendants' Motion For Protective Order and to enter its order barring any trial testimony by Dr. Neuhalfen and awarding Plaintiff its attorney fees and costs.

Dated: June 1, 2005                                PLUNKETT & COONEY, PC

                                                   *[signature]*
                                                   Mark H. Verwys (P23803)
                                                   Attorneys for SL Montevideo Technology, Inc.

Branches.13498.30425.1418207-1